IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIM NO. 22-CR-409 |
| ERIC CLARK, | ) | Judge: Mehta |
| | ) | |
| Defendant. | ) | Sentencing Date 6/7/24 |

### DEFENDANT ERIC CLARK'S
### MEMORANDUM IN AID OF SENTENCING

COMES NOW Eric Clark, by and through counsel, submits the following memorandum in aid of sentencing.

### Background

On May 4, 2021, Mr. Eric Clark was arrested in the Western District of Kentucky and released on an unsecured bond. He made his initial appearance in this jurisdiction on May 10, 2021. On December 19, 2022, the United States Attorney's Office filed a four-count indictment against him. Count 1 charged Mr. Clark with Entering and Remaining in a Restricted Building, in violation of 18 USC §1752(a)(1). Count 2 charged Mr. Clark with Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 USC §1752(a)(2). Count 3 charged Mr. Clark with Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 USC §5104(e)(2)(D). Count 4 charged Mr. Clark with Parading,

1

Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(2)(G). On November 17, 2022, the court permitted Mr. Clark to represent himself, and the court maintained undersigned counsel as standby counsel.

On January 29, 2024, Mr. Clark's jury trial began before this court, where he represented himself, with undersigned counsel serving as standby counsel. On January 31, 2024, Mr. Clark was found guilty of all four counts. A presentence report was ordered and, at Mr. Clark's request, undersigned counsel became counsel of record for Mr. Clark to represent him at sentencing. A sentencing date was set for June 7, 2024.

**Actions on January 6, 2021**

The date of January 6, 2021, will forever be remembered in American history as a day in which the foundations of our democracy were shaken. There were many individuals who caused physical damage, assaulted police officers, and in many other ways disgraced the hallowed halls of the U.S. Capitol. However, Eric Clark was not one of those individuals.

In early January of 2021, Eric Clark travelled from his home of Louisville, Kentucky, to Washington, DC, to attend the "Stop the Steal" rally organized by then-President Donald Trump. On January 5, 2021, Mr. Clark did some sightseeing around the U.S. Capitol. The next day, on January 6, 2021, Mr. Clark walked, along

2

with many other individuals, from the rally to the U.S. Capitol. Mr. Clark wore a Guy Fawkes mask on that day while on the U.S. Capitol grounds.

Once arriving on the Capitol grounds, Mr. Clark ended up on the west side of the U.S. Capitol. After individuals other than Mr. Clark broke through the police line, he followed them and worked his way onto the Upper West Terrace and finally made his way into the U.S. Capitol. At approximately 2:48 p.m., Mr. Clark entered the U.S. Capitol through the Senate Wing Door. He proceeded to walk down the hallway and into the Crypt area. He used his cellphone to film the actions of other individuals in the U.S. Capitol. Mr. Clark eventually exited out of the same door he entered at approximately 3:12 p.m., thereby being inside the Capitol for approximately 24 minutes. There is no allegation that Mr. Clark assaulted any individual or damaged any property during his time in the U.S. Capitol.

## Argument

### A. Statutory Penalty

The penalty for a violation of Count One, Entering and Remaining in a Restricted Building, in violation of 18 USC § 1752(a)(1), carries a maximum penalty of one year imprisonment and/or a $100,000 fine; The penalty for a violation of Count 2, Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 USC § 1752(a)(2), also carries a maximum penalty of carries a maximum penalty

of one year imprisonment and/or a $100,000 fine. The penalty for violation of Count 3, Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 USC § 5104(e)(2)(D), carries a maximum penalty of 6 months imprisonment and/or a $5,000 fine. The penalty for Count 4, Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(2)(G), also carries a maximum penalty of six months imprisonment and/or a $5,000 fine. Since Counts Three and Four are Class B misdemeanors, the U.S. Sentencing Guidelines do not apply to those specific counts. *See* USSG §1B1.9.

Mr. Clark does not take issue with the offense level calculation which only applies to Counts 1 and 2 as discussed earlier. The total offense level, which is essentially the base level offense with no adjustments, is 10. As Mr. Clark went to trial but did not testify, there are no adjustments based upon either acceptance of responsibility or obstruction of justice.

With regard to Mr. Clark's criminal history, Mr. Clark respectfully suggests that he has been improperly scored, or, at the very least, his criminal history score is overstated. The defense believes that Mr. Clark should be considered with a criminal history of I rather than III. According to the PSR, Mr. Clark has been scored with a criminal history of four, which places him with a criminal history of III. PSR at ¶ 59. The basis for that argument is that four of his convictions were "conditionally

discharged" under Kentucky law and should not be counted towards his criminal history score.

A "conditional discharge" is a specialized resolution to criminal matters under committed in violation of Kentucky law. Its description is provided under Kentucky Code 533.020. That section, under section 3, states as follows:

> (3) When a person who has been convicted of an offense or who has entered a plea of guilty to an offense is not sentenced to imprisonment, the court may sentence him to conditional discharge if it is of the opinion that the defendant should conduct himself according to conditions determined by the court but that probationary supervision is inappropriate. Conditions of conditional discharge shall be imposed as provided in KRS 533.030, but the court may modify or enlarge the conditions or, if the defendant commits an additional offense or violates a condition, revoke the sentence at any time prior to the expiration or termination of the period of conditional discharge. Ky. Rev. Stat §533.030.

Under the U.S. Sentencing Guidelines, for a person to receive any point score, it is based upon charges which the defendant receives a prior sentence. Prior sentence is defined under USSG §4A1.2(a)(1). That section states:

### §4A1.2. Definitions and Instructions for Computing Criminal History

(a) Prior Sentence

(1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense.

Given the fact that, as the name implies, these charges are eventually "discharged," Mr. Clark would submit that the eventual discharge of these offenses means that they should not be considered to be an eventual adjudication of guilt. Therefore, these charges should not be considered as part of his criminal history.

Alternatively, Mr. Clark would respectfully suggest that his criminal history is overstated pursuant to the U.S. Sentencing Guidelines. The Sentencing Guidelines allow for downward departures as to criminal history score is overstated or overrepresented. Specifically, USSG § 4A1.3 states in part as follows:

> (b)    DOWNWARD DEPARTURES.—
>
> (1)    STANDARD FOR DOWNWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted. USSG § 4A1.3(b).

In Mr. Clark's criminal record, it appears that many of his convictions scored are dated and are of relatively minor offenses or offenses which are not criminal in the District of Columbia. Thus, the defense submits that it appears that he has been scored four points for what are essentially minor offenses and therefore his criminal history overrepresents his criminal history. He received one point for possession of marijuana, which has been decriminalized in the District of Columbia. PSR at § 53. In fact, Mr. Clark only received a fine and costs imposed for that offense. *Id.* He

received one point for possession of drug paraphernalia, in which he only received a fine and costs. PSR at § 55. He also received one point for second degree disorderly conduct. PSR at § 56. He received one point for misdemeanor indecent exposure. PSR at § 57. Accordingly, many of these offenses are minor offenses, offenses in which he only received a monetary fine, and/or offenses which are not illegal in the District of Columbia. Therefore, pursuant to USSG §4A1.3, Mr. Clark would suggest that, when the court considers the nature of the offenses as well as the fact that most of these charges were resolved via a "conditional discharge," Mr. Clark's criminal history is overstated and therefore a scoring in Criminal History Category I or II is more appropriate.

Accordingly, depending on the criminal history score, along with an offense level score of 10, Mr. Clark would be in either Zone B (if Criminal History Category I or II) or Zone C (if Criminal History Category III). For the reasons argued above, Mr. Clark should be sentenced under Zone B. Accordingly, Mr. Clark would request a sentence of probation with, as required under the Sentencing Guidelines, and additional special conditions. USSG §5B1.1(a)(2). Given Mr. Clark's current circumstances, Mr. Clark would ask for home detention with permission to continue his verified employment.

**Sentencing Factors Under 18 U.S.C. § 3553(a)**

Sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of probation with home confinement.

    A. The Nature and Circumstances of the Offense

As stated earlier, Mr. Clark's involvement in the events of January 6, 2021, were on the lower end of inappropriate activity at the U.S. Capitol. Mr. Clark was not part of the group that broke the police lines, but instead followed the group of individuals that broke the police lines shortly thereafter. He did not break or damage any property to enter the U.S. Capitol, but instead entered through the doors once others had opened them. While in the U.S. Capitol, he did not cause any damage or assault any law enforcement authority while in the Capitol. From the video surveillance, it does not appear that Mr. Clark was doing any yelling or protesting to

8

any major extent. He remained in the U.S. Capitol for less than half an hour and left without having to be physically pushed out by police. Accordingly, while Mr. Clark was indeed in the U.S. Capitol, his actions on January 6th did not contribute to any major extent to the more riotous behavior displayed by others on that day.

      B. Mr. Clark's History and Characteristics

Mr. Clark has surmounted many challenges in his life. Mr. Clark grew up with a father who was a drug addict who was also abusive. His parents divorced when Mr. Clark was three years old. Fortunately, his mother remarried, and Mr. Clark had a good relationship with his stepfather. Mr. Clark attempted to reconcile with his biological father, but it eventually fell by the wayside and stopped having contact with his father when Mr. Clark was in his twenties.

Mr. Clark was married in the year 2000 and remained with his wife until 2009. Mr. Clark believes that their official status remains that they are separated, as he believes their divorce was never finalized. He has two children from that union and has four grandchildren. He raised the children as a single parent from the ages of six and nine until they reached adulthood. He maintains close relationships with his children and grandchildren. Mr. Clark also served in the Marine Corps from 1994 until his discharge in 1995 due to his drug use. He has resided in Kentucky for most of his life until recently, when he relocated to Florida at the beginning of this year.

Unfortunately, one thing that Mr. Clark apparently received from his father was a penchant for drug addiction. Mr. Clark began his drug use when he was 15 years old. As the court can see from the PSR, Mr. Clark has regularly used all sorts of drugs, including marijuana, cocaine (both crack and powder), LSD, methamphetamine, ecstasy, mushrooms, and heroin. He eventually turned to a daily use of heroin, including taking "speedballs," or heroin mixed with methamphetamine, multiple times a week. He entered several drug treatment programs but ended up relapsing. However, upon an arrest in early 2018, he stopped using almost every drug, and is now using only marijuana occasionally to assist with sleep issues. His commitment to change is laudable, and with the exception of the matter at bar, for over six years, Mr. Clark has not had any additional contact with the authorities.

In support of his sentencing, his current employer, Paul E. Slavin, a former Master Chief Petty Officer for the U.S. Navy, has provided a letter of support. The letter is incorporated herein and attached hereto as Exhibit A. Mr. Slavin is Superintendent and Managing Partner of Perdido Bay Gold Club and Cottages on the Green in Pensacola, Florida. He hired Mr. Clark in February of 2024 as part of the maintenance staff and Mr. Clark has, in that short time, received two raises and now has received a promotion to the position of operator. He indicates that Mr. Clark

works six days a week, and he states that Mr. Clark has "excelled at all tasks." His employment also requires drug testing, which, as discussed above, has not been an issue of concern. He suggests that Mr. Clark should get a probationary sentence with home confinement with permission to continue his employment.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

Mr. Clark has been sufficiently deterred by this experience. Mr. Clark, since his sobriety in 2018, has been staying out of any trouble. The fact that he was arrested led to the loss of his job once his employer found out of his involvement in this offense, where he was earning $22 an hour as a machine operator. He ended up homeless for a period of time, and eventually had to relocate to Florida to have a residence and have employment where he currently maintains steady employment. He remains employed to date, but this legal experience has been very trying on Mr. Clark, particularly because he chose to represent himself. While his support of former President Trump may have not changed, his political involvement and efforts in that regard have been greatly diminished so as to avoid a recurrence of the situation he finds himself currently. He simply desires to return to some level of normalcy and not have any further contact with the criminal justice system. He regrets his actions and what it has led to and is seeking to maintain a law-abiding life free from drugs and with steady employment.

11

D.     The Need to Avoid Unwarranted Sentencing Disparities

The government has previously provided a chart of sentences of people who have been convicted of individuals charged in January 6th matters. Below are names of individuals who have been convicted of the same four charges of which Mr. Clark was convicted,[1] along with the case numbers and eventual sentence:

| | | |
|---|---|---|
| Lawrence Dropkin | 21-CR-00734-JEB | 30 days incarceration<br>12 months supervised release |
| Russell Alford | 21-CR-00263-TSC | 12 months incarceration<br>12 months supervised release |
| Hector Vargas-Santos | 21-CR-00047-RDM | 4 months incarceration<br>12 months supervised reléase |
| John Nassif | 21-CR-00421-JDB | 7 months incarceration<br>12 months supervised release |
| Hatchet Speed | 22-CR-00244-TNM | 48 months incarceration<br>36 months supervised release |
| Kirstyn Niemela | 22-CR-00025-CRC | 11 months incarceration<br>36 months supervised reléase |
| Stacy Wade Hager | 21-CR-481-TSC | 7 months incarceration |
| Isaac Yoder | 21-CR-00505-RCL | 12 months incarceration<br>12 months supervised release |
| Anthony Griffith | 21-CR-00244-CKK | 6 months incarceration |

---

[1] This list contains only the time received of either probation, incarceration, and/or supervised release. This does not include additional special conditions, such as community service hours, nor does it include fines, as Mr. Clark was indigent and was appointed under the Criminal Justice Act.

12

| | | |
|---|---|---|
| | | 12 months supervised release |
| David Rhine | 21-CR-00687-RC | 4 months incarceration<br>12 months supervised release |
| Jolene Eicher | 22-CR-00038-BAH | 2 months incarceration<br>12 months supervised release |
| Duncan MacAndrew | 21-CR-00730-CKK | 90 days incarceration<br>24 months supervised release |
| Cynthia Ballenger | 21-CR-00719-JEB | 4 months incarceration<br>9 months supervised release |
| Christopher Price | 21-CR-00719-JEB | 45 days incarceration<br>9 months supervised release |
| James Cusick, Jr. | 21-CR-00575-JDB | 10 days incarceration<br>24 months supervised release |
| Casey Cusick | 21-CR-00575-JDB | 10 days incarceration<br>24 months supervised release |
| David Lesperance | 21-CR-00575-JDB | 10 days incarceration<br>24 months supervised release |
| Tyler Tew | 22-CR-00027-RNM | 24 months probation |
| Stephen Horn | 21-CR-00301-TJK | 12 months probation |
| Dillon Homol | 23-CR-00050-JMC | 24 months probation<br>90 days home detention |

As the court could see, there appear to be twenty individuals who were convicted of the same four counts as Mr. Clark. Of those twenty, 3 of them received

13

probationary sentences, one which had a portion of home detention. Nine of the defendants, or 45% of the defendants, received a sentence of 2 months of incarceration or less or probation (with or without home detention).

Given Mr. Clark's circumstances, including his employment, and given Mr. Clark's minimal activity while in the U.S. Capitol, as well as the § 3553(a) factors, the defense would suggest a sentence similar to that of Dillon Homol, who received 24 months probation and home detention. This sentence is not at the bottom of the range of similarly situated defendants but would still provide appropriate punishment for Mr. Clark's actions. If the court feels it necessary, Mr. Clark would be willing to serve some additional time of home confinement, thus allowing for adequate punishment but allowing him to maintain his job.

WHEREFORE, for the reasons stated above, Defendant Eric Clark respectfully requests a probationary sentence with home confinement with time that this court deems appropriate.

Respectfully submitted,

ERIC CLARK
By Counsel

   /s/ John L. Machado
John L. Machado, Esq.
Bar No. 449961
Counsel for Eric Clark
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com

**Certificate of Service**

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 4th day of June, 2024, which will send a notification of such filing (NEF) to the following to all counsel of record.

    /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Eric Clark
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com