KARA HARTZLER
FEDERAL DEFENDERS OF SAN DIEGO
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
kara_hartzler@fd.org

Attorney for
ERIC DOUGLAS CLARK

**UNITED STATES DISTRICT COURT**
**DISTRIC OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>ERIC DOUGLAS CLARK,<br><br>                Defendant. | Case No. 22-cr-409-APM<br><br>**MOTION FOR BAIL PENDING COMPLETION OF APPELLATE PROCEEDINGS AND STATEMENT OF POINTS AND AUTHORITIES** |

### MOTION FOR BAIL PENDING APPEAL

Mr. Eric Clark, through undersigned counsel, respectfully moves this Court to grant him bond pending the completion of his appellate proceedings under 18 U.S.C. § 3143(b)(1).

### STATEMENT OF POINTS AND AUTHORITIES

As the January 6 appeals make their way through the appellate courts, two lead cases may directly impact the convictions in Mr. Clark's case. Granting bail pending appeal would ensure that Mr. Clark does not unfairly serve a five-month sentence for misdemeanors that may be overturned under these cases.

First, the D.C. Court of Appeals is currently considering whether the mens rea of 18 U.S.C. § 1752 requires knowledge as to the presence of a Secret-Service protectee. As one judge noted, "[c]ourts in this district have split nearly down the

1

middle on the question" but "the D.C. Circuit is expected to decide this issue in the reasonably near future in United States v. Griffin, No. 22-3042 (oral argument held December 4, 2023)." *United States v. Easterday*, No. CR 22-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024).

Second, a pending petition for a writ of certiorari in United States v. Alford, 23-7158, presents the issue of whether mere presence in the Capitol satisfies § 1752(a)(2)'s and § 5104(e)(2)(D)'s prohibitions against "disorderly or disruptive" conduct. Though the Solicitor General waived the government's right to respond, the Supreme Court ordered a response, and the case is currently scheduled for conference on September 30, 2024.

These cases may lead to the reversal of three out of four of Mr. Clark's misdemeanor convictions. What's more, release pending appeal would allow Mr. Clark to challenge his sentence, raising important questions of law that would otherwise become moot during his appeal. Because Mr. Clark poses no flight risk or danger to the community, and because these cases and his appeal cannot be completed during the course of his five-month sentence,[1] granting him release pending appeal would allow him to challenge his sentence and prevent him from serving time for convictions that may be reversed.

---

[1] The median time from a notice of appeal and a final disposition from the D.C. Circuit is about eleven months. *See, e.g.*, U.S. Courts, Median Time Intervals in Months for Cases Terminated on the Merits (2023), https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2023.pdf.

BACKGROUND

As this Court is well aware, Mr. Clark is one of the more than 1200 people charged with a federal offense for their actions at the U.S. Capitol on January 6, 2021. But Mr. Clark's background and the conduct underlying this offense make him well suited to remain on release pending appeal.

**A.   After many years of drug addiction, Mr. Clark has now achieved six years of sobriety and stability.**

As a child, Mr. Clark endured the abuse of a drug-addicted father and unfortunately repeated some of those patterns as an adult. PSR ¶ 17. Beginning at age 15, Mr. Clark began consuming drugs such as marijuana, cocaine, LSD, methamphetamine, ecstasy, mushrooms, and heroin, often on a daily basis. PSR ¶ 83. He served in the Marine Corps for a year but was discharged due to drug use. PSR ¶ 76, 88. He entered several drug treatment programs but ended up relapsing. PSR ¶ 84. He accrued a string of drug-related citations and misdemeanors. PSR ¶ 47–57.

But all that changed in 2018, when Mr. Clark finally got sober. PSR ¶ 84. For the last six years, he has not taken drugs, except for the occasional use of marijuana to help him sleep. PSR ¶ 84. Apart from this case, Mr. Clark has no arrests or other criminal history during that time period.

Despite his 25-year history of substance abuse, Mr. Clark managed to raise two children as a single parent. PSR ¶ 75. Their mother suffered from severe mental illness, including schizophrenia, dissociative disorder, and identity disorder. PSR ¶ 74. Although she and Mr. Clark have been separated for 15 years, he

maintains close relationships with both of his children, as well as his mother and stepfather. PSR ¶ 73–75.

### B. Mr. Clark is convicted of four misdemeanors related to the events of January 6.

For his involvement in the events of January 6, Mr. Clark was convicted of four misdemeanors: 1) entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); 2) disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); 3) violent entry and disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and 4) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

But the evidence at trial showed that Mr. Clark's conduct in and around the Capitol was more akin to that of a trespasser than a violent or dangerous individual. Outside the Capitol, he merely "*witnessed* confrontations between the police and the mob, including tear gas being deployed and objects being thrown by the mob at police." PSR ¶ 17 (emphasis added). Only "*[a]fter* other rioters broke through the police line" did he "walk closer to the Capitol Building," where he "climbed a set of stairs to access the Upper West Terrace." PSR ¶ 17 (emphasis added). Although he disregarded an officer's hand signal to stay out, he only remained in the building "for approximately the next 24 minutes" and then left of his own accord. PSR ¶ 17. There were no allegations that he caused any damage or assaulted any law enforcement officer. Moreover, during his prosecution there was no suggestion that he ever "willfully impeded or obstructed the administration of

4

justice during the course of the investigation, prosecution or sentencing" of his offense. PSR ¶ 24.

During pre- and post-trial proceedings, Mr. Clark took pains to comply with his conditions of release. Initially, there was some confusion about his duty to report in June 2021, the month following his release. PSR ¶ 5. But in the three years since, Mr. Clark has carefully sought this Court's advance permission to travel, remain outside his district, or relocate to another district. Dkt. 69, 73, 74, 84, 97. His supervising officer has reported no other pretrial release violations and states that he is "currently in compliance with all Court ordered conditions of release." PSR ¶ 7.

During sentencing, this Court granted Mr. Clark's request to self-surrender at any time after July 15, 2024. Dkt. 138 at 1. After undersigned appellate counsel was appointed and began to investigate a motion for continued release pending appeal, this Court granted Mr. Clark's motion to extend his self-surrender date to August 15, 2024. Dkt. 138; Minute Order, July 19, 2024.

### C. Several lead cases present questions of law that will directly bear on three of Mr. Clark's four convictions.

Given the large volume of January 6 prosecutions for trespass-related crimes, it is not surprising that many defendants have raised challenges to the same statutes under which Mr. Clark was convicted. As explained below, the D.C. Circuit is currently defining the mens rea for 18 U.S.C. §§ 1752(a)(1) and (a)(2) in United States v. Griffin, No. 22-3042, while the U.S. Supreme Court may consider whether the term "disorderly or disruptive conduct" in § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D) includes mere physical presence. These cases present new and novel

5

issues that have divided reasonable jurists and may create precedent that reverses most of Mr. Clark's convictions.

## ARGUMENT

**Mr. Clark is entitled to bail pending appeal under § 3143(b).**

A person is entitled to bail pending appeal if a judge answers several questions in the affirmative. *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). Those questions are whether:

(1) "the person is not likely to flee or pose a danger to the safety of any other person or the community if released," *id.* (quoting 18 U.S.C. § 3143(b)(1)(A));

(2) "the appeal is not for purpose of delay," *id.* (quoting § 3143(b)(1)(B)); and

(3) the appeal "raises a substantial question of law or fact likely to result in reversal," *id.* (quoting § 3143(b)(1)(B)(i)).

As explained below, the answer to each question is yes.

**I.   Mr. Clark is not likely to flee or pose a danger if he is continued on release because he has no other criminal history since getting sober in 2018 and has complied with his conditions of release.**

As this Court has already implicitly found, Mr. Clark does not pose a risk of flight or danger to the community. 18 U.S.C. § 3143(b)(1)(A). Fed. R. Crim. P. 46(c); Fed. R. App. P. 9(c). Before granting release pending sentencing, a court must "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). That is the same standard applicable to bail pending appeal. 18 U.S.C. § 3143(b)(1)(A). This Court found that that standard was met by allowing Mr. Clark

6

to remain on release pending sentencing and subsequently giving him a self-surrender date. *See* Dkt. 138 at 1.

The evidence in this case supports that ruling. The government never alleged that Mr. Clark was one of the people who threatened or assaulted officers to try to break into the Capitol—rather, he simply "witnessed" these altercations. PSR ¶ 17. Only "*[a]fter* other rioters broke through the police line" did he "walk closer to the Capitol Building," where he "climbed a set of stairs to access the Upper West Terrace." PSR ¶ 17 (emphasis added). Though he arguably disregarded an officer's hand signal to stay out, PSR ¶ 19, Mr. Clark committed no acts of violence or property damage inside the Capitol building. Instead, he simply filmed the actions of others and then voluntarily left 24 minutes later. PSR ¶ 19–21. So while a jury found him guilty of trespass-related offenses, Mr. Clark's crimes do not demonstrate any propensity towards violent or dangerous conduct—even in the midst of a chaotic scene that presented many opportunities to engage in it.

Furthermore, these offenses represent Mr. Clark's *only* criminal history in the six years since he got sober. PSR 16. And during his years of addiction, his criminal history consisted entirely of misdemeanors. PSR ¶ 47–57. While a few of these incidents did involve scuffles with his wife (who suffered from schizophrenia, dissociative disorder, and identity disorder), he has not displayed any propensity towards violence outside of this specific context and no longer has any contact with his wife. (PSR ¶ 56, 62, 74).

Mr. Clark has also complied with his conditions of release and demonstrated that he has no intention of fleeing. In the first month or so after his release, Mr. Clark initially failed to maintain contact with pretrial services and provide updated contact information. PSR ¶ 6. But after this Court "sternly admonished" him, Mr. Clark got the message and has complied with his release conditions for the last three years. *See* Minute Order, June 28, 2021; PSR ¶ 7. Mr. Clark has sought permission from this Court to clarify when and where he may travel for his hearings and to view evidence in the District of Columbia. Dkt. 69, 73, 74, 84, 97. He also requested and received advance permission to reside in the Northern District of Florida. PSR ¶ 6. And his supervising officer has reported no other pretrial release violations and states that he is "currently in compliance with all Court ordered conditions of release." PSR ¶ 7.

In other words, Mr. Clark has taken this Court's message about compliance to heart and proven himself trustworthy. The Court's decision to grant him a self-surrender date reflects this, since it necessarily found "by clear and convincing evidence that [Mr. Clark] is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). That same standard governs the question of whether the Court should allow Mr. Clark to remain on release pending appeal. *See* 18 U.S.C. § 3143(b)(1)(A). And Mr. Clark has continued to earn that trust by asking for an extension of his July 15 self-surrender date so that undersigned counsel could draft and submit this motion. Thus, Mr. Clark has

demonstrated that he is "not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1).

## II. Mr. Clark has not filed an appeal for the purpose of delay.

Throughout his case, Mr. Clark has availed himself of the full spectrum of constitutional rights available to criminal defendants. He asserted his right to represent himself and convinced a magistrate judge that he did so knowingly and voluntarily. *See* Minute Order, Nov. 17, 2022. He exercised his Sixth Amendment right to a jury trial even though he was only charged with misdemeanors. *See* Minute Entry, Jan. 30, 2024. Mr. Clark has not been a spectator in his own case—at every stage, he has actively and respectfully held the government to its burden of proving guilt beyond a reasonable doubt. Thus, Mr. Clark's appeal is not undertaken for the purpose of delay; rather, it reflects his engagement and desire to exhaust all potential rights and remedies before accepting his convictions and allowing the government to deprive him of his liberty.

## III. Mr. Clark's appeal raises at least two substantial questions of law that are likely to result in reversal of three of his convictions.

If a court determines that a person is not a flight or safety risk and his appeal is not a delay tactic, it proceeds to a final "two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?" *Perholtz*, 836 F.2d at 555. "[A] substantial question is a close question or one that very well could be decided the other way." *Id.* (internal quotation marks omitted).

Here, Mr. Clark meets that standard. At least two pending cases raise substantial questions of law that may affect the outcome of three out of four of Mr. Clark's convictions.

First, numerous defendants have challenged the mens rea of § 1752(a) by contending that a defendant must not only know he was in "a restricted building or grounds"—he must know he was in a restricted building or grounds where a "person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). Although the latter clause appears in the definition of a "restricted buildings or grounds," rather than the language of the crime itself, the Supreme Court has repeatedly held that a defendant must "possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Rehaif v. United States*, 588 U.S. 225, 229 (2019) (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). Because a person could not be convicted under § 1752(a) of conduct in a restricted building or grounds if a "person protected by the Secret Service" were *not* temporarily visiting (and neither of the other two alternative definitions applied), this must be a "statutory element[ ]." *Id.* Thus, the government must show that Mr. Clark "possess[ed] a culpable mental state" as to that element—i.e., that he knew a person "protected by the Secret Service" was at the Capitol that day.

But the jury instructions in this case did not require the jury to make this finding. Specifically, the government only had to prove that Mr. Clark "entered or remained in a restricted building or grounds without lawful authority to do so" and

10

that he "did so knowingly." Dkt. 112 at 11. While the instruction defined "restricted building or grounds" as a place "where a person protected by the Secret Service is or will be temporarily visiting," it did not require the jurors to find that Mr. Clark knew this in order to convict.  In other words, jurors were told that Mr. Clark "must have 'acted' knowingly, but not which elements were necessary components of [Mr. Clark's] knowledge." *United States v. Easterday*, No. CR 22-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024).

As the judge in *Easterday* noted, this argument is "not without force" because "[c]ourts in this district have split nearly down the middle on the question." *Id*. At least four judges have agreed with this mens rea argument,[2] while six have rejected it.[3] But "the D.C. Circuit is expected to decide this issue in the reasonably near future in United States v. Griffin, No. 22-3042 (oral argument held December 4, 2023)." *Easterday*, 2024 WL 1513527, at *10. Thus, this issue "raise[s] a substantial question," and "the resolution of that question in [Mr. Clark's] favor [would] be likely to lead to reversal." *Perholtz*, 836 F.2d at 555.

---

[2] *See United States v. Samsel*, No. 21-537, ECF No. 345, at 32–33 (D.D.C. Feb. 9, 2024) (Cobb, J.); *United States v. Groseclose*, __ F.Supp.3d __, 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States v. Elizalde*, __ F.Supp.3d __, 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.); *United States v. Hostetter*, 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.).

[3] *See United States v. Warnagiris*, No. 21-382, 2024 WL 1328510, ECF No. 128 at 4–5 (D.D.C. Mar. 28, 2024) (Friedman, J.); *United States v. Chambers*, No. 23-300 (D.D.C. Mar. 14, 2024) (Friedrich, J.); *United States v. Nester*, No. 22-183 (D.D.C. Mar. 5, 2024) (Chutkan, J.); *United States v. Carnell*, 2024 WL 639842, at *14 (D.D.C. Feb. 15, 2024) (Howell, J.); *United States v. Rhine*, No. 21-687, ECF No. 104, at 4 (D.D.C. Apr. 24, 2023) (Contreras, J.); *United States v. Griffin*, No. 21-92, ECF No. 106, at 330–32 (D.D.C. Mar. 22, 2022) (McFadden, J.).

Second, other defendants have challenged the definition of "disorderly or disruptive conduct" that appears in both § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D), arguing that a defendant's mere presence in a restricted area—without more—does not meet this definition. For instance, in *United States v. Alford*, 89 F.4th 943, 947 (D.C. Cir. 2024), a defendant "remained inside the Capitol for approximately thirteen minutes," during which time he filmed protestors but "mostly stood to the side and observed." At trial, he moved for a judgment of acquittal, arguing that there was "insufficient evidence to prove that he had engaged in 'disorderly or disruptive conduct.'" *Id*. at 948. The district court denied the motion, reasoning that "Mr. Alford's mere presence inside the Capitol disturbed the public peace or undermined public safety" and that "his presence was an aspect of the disorder and disruption of the Capitol." *Id*.

The D.C. Court of Appeals affirmed. It rejected the defendant's argument that because § 1752(a)(2) separately requires a defendant's conduct to "impede[ ] or disrupt[ ] the orderly conduct of Government business," it would be redundant to interpret the *actus reus* of "disorderly or disruptive conduct" to require the same. *Id*. at 951. Instead, it held that "conduct is disorderly if, viewed in the circumstances in which it takes place, it is likely to endanger public safety or create a public disturbance." *Id*. at 950. It then concluded that a rational jury could find the defendant guilty because "his presence in the Capitol contributed to the Congress's multi-hour delay in completing the electoral certification." *Id*. at 952.

12

The defendant filed a petition for a writ of certiorari on April 4, 2024. *See* Alford v. United States, 23-7158. In this petition, he argued that the D.C. Circuit's reading would "make the words 'disorderly' and 'disruptive' entirely redundant, contrary to the interpretive canon against surplusage." *Id*. at 8. In other words, *every* person who was merely present in a restricted building or ground at a particular time and place would be automatically guilty of the offense—regardless of their actual conduct.

Though the Solicitor General waived the right to respond to this petition, the Supreme Court ordered a response. *See* Docket, Alford v. United States, 23-7158. After briefing was completed, the Supreme Court distributed the case for conference on September 30, 2024. *See id*.

The Supreme Court's decision to order the Solicitor General to respond to this petition shows that it "raise[s] a substantial question." *Perholtz*, 836 F.2d at 555. Moreover, Mr. Clark's conduct was similar to the defendant's in *Alford*. As in *Alford*, Mr. Clark entered the Capitol only "*[a]fter* other rioters broke through the police line." PSR ¶ 17 (emphasis added). And as in *Alford*, Mr. Clark simply filmed the actions of others and then voluntarily left minutes later. PSR ¶ 19–21. Thus, "the resolution of that question in [Mr. Clark's] favor [would] be likely to lead to reversal." *Perholtz*, 836 F.2d at 555. So there are at least two "substantial questions" that could reverse three out of four of Mr. Clark's convictions.

\* \* \*

As shown above, Mr. Clark has met the three requirements for continued release pending appeal under § 3143(b)(1)(A): he does not pose a danger or a flight risk, he has not undertaken this appeal for purposes of delay, and he raises at least two substantial questions of law. Furthermore, if Mr. Clark's two § 1752 convictions were reversed, he would only be convicted of Class B misdemeanors and would not even be subject to the Sentencing Guidelines. *See* U.S.S.G. § 1B1.9 ("The sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction."). Thus, the substantial legal questions here would likely lead to a different sentencing analysis and affect the outcome of these proceedings.

## CONCLUSION

For the foregoing reasons, this Court should order Mr. Clark to remain on the same conditions of release pending appeal so that he may benefit from the disposition of other pending cases that may lead to the reversal of most of his convictions.

Respectfully submitted,

Dated:  July 24, 2024              *s/Kara Hartzler*

Federal Defenders of San Diego, Inc.
Attorney for
Eric Douglas Clark
Email:  kara_hartzler@fd.org