UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:22-CR-409 (APM) |
| : | |
| ERIC CLARK, : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

The United States hereby respectfully opposes defendant Eric Clark's motion for bail pending appeal. The defendant has failed to raise a substantial question of law because, even if he is successful on his appeal, that would not result in a reversal of all counts on which imprisonment is imposed, nor would it even result in a reduced sentence. Thus, the motion should be denied.

I.   **Background and Procedural History**

   a.   **Clark's Participation in the January 6, 2021 Riot at the U.S. Capitol**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Clark carpooled from Kentucky to Washington, D.C., with people he met on the internet to attend then-President Donald Trump's rally scheduled for January 6. After attending the rally, including President Trump's speech, Clark walked to the Capitol. During much of his time on

January 6, he wore a black-and-white Guy Fawkes mask, including while he was on Capitol grounds.

When Clark arrived on Capitol grounds, he walked immediately to the very front of the crowd that was facing off with police officers on the Capitol's west side. There, he witnessed confrontations between the police and the mob, including tear gas being deployed and objects being thrown by the mob at police. After other rioters broke through the police line, Clark walked closer to the Capitol Building. He climbed a set of stairs to access the Upper West Terrace where he took videos and pictures using his cellphone.

At approximately 2:48 p.m., Clark was part of a group of rioters that forced their way into the Capitol Building through the Senate Wing Door. The crowd pushed their way past police officers and into the building while a blaring alarm sounded from the broken door. At the moment he entered the building, Clark came face to face with a police officer who held his open palm up to Clark, signaling him to stop.

Nevertheless, Clark entered the building and stayed inside for approximately 24 minutes. While inside, Clark removed his mask, took selfies, and was smoking what appeared to be marijuana. He joined in the rowdy chanting of the crowd.

Later, Clark walked down a hallway and into the Crypt. There, he walked past police officers who were trying to get him to leave the building. Clark refused. Instead, as captured on a video he took on his cellphone, Clark said, "No, we're not trying to get out. This way! This way! They're pushing you out of the building. This way! They want us to go out of the building. I'm not going there."

Clark then walked back down the same hallway, where he entered the private hideaway office of Senator Jeff Merkley. There, he used his phone to film other rioters who were chanting,

banging on a table, and smoking. Clark finally made his way back to the area near the Senate Wing Door and left the Capitol Building through the same door he entered at approximately 3:12 p.m.

### b. Procedural History

On January 31, 2024, a jury convicted Clark of four crimes related to his conduct at the U.S. Capitol on January 6, 2021. Those crimes are: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Min. Entry 01/31/2024.

On June 7, 2024, the Court sentenced Clark to five months of imprisonment on each of Counts 1 through 4, in addition to a term of twelve months of Supervised Release. *See* Judgment, Doc. 136. Importantly, the Court ordered that all four terms of imprisonment were to run concurrently. *Id.*

Clark timely noticed his appeal. Doc. 134. The Court set a delayed surrender date of July 15, 2024, which it later extended to August 15, 2024.

On July 24, 2024, Clark filed his Motion for Bail Pending Appeal, Doc. 141. In his motion, Clark claims that, because pending appeals in two other January 6 cases, *United States v. Griffin*, No. 22-3042 and *United States v. Alford*, 23-7158, may affect his own convictions, he is entitled to bail during the pendency of his appeal.

Clark is incorrect. Even if the appeals in those two cases are successful, they would not overturn all of Clark's counts of conviction, Clark's sentence would remain unchanged, and he is not entitled to bail pending appeal.

## II. Applicable Legal Principles

Clark moves for bond pending appeal under 18 U.S.C. § 3143(b). Under 18 U.S.C. § 3143(b)(1), a defendant who has been sentenced to a term of imprisonment "shall … be detained" unless the court finds that the defendant has established two criteria:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released [with conditions]; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1)(A)-(B). A substantial question is "a 'close' question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam). The requirements for "reversal" and "an order for a new trial" requires reversal or a new trial on all counts, not just a single count or a subset of the counts of conviction. *Id.* at 557 (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis added).

If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is the defendant's burden to make the

4

requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz,* 836 F.2d at 555-556 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

### III.     Argument

Clark fails to establish that his appeal would result in "reversal of all counts"—in fact, as he describes it in his motion, there is no way that it could. *Perholtz*, 836 F.2d at 557. Clark argues that the appeal in *Griffin*, if decided in the appellant's favor, may affect his convictions on Count 1, a violation under 18 U.S.C. § 1752(a)(1) and Count 2, a violation under 18 U.S.C. § 1752(a)(2). And he says that *Alford*, if decided in the appellant's favor, may also affect his conviction on Count 2, as well as his conviction on Count 3, a violation under 40 U.S.C. § 5104(e)(2)(D).

But neither *Griffin* nor *Alford* threaten Clark's conviction on Count 4, a violation under 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. Nowhere in his motion does Clark say that he plans to challenge that conviction, and at several points in his motion, Clark says his appeal has the potential to affect only "*three out of four* of Mr. Clark's convictions." Doc. 141 at 10 (emphasis added). Thus, even in Clark's best-case scenario, his conviction on Count 4 would stand.

And if Clark's conviction on Count 4 is unaffected, the five-month sentence this Court imposed for Count 4 would also remain. The Court sentenced Clark to a period of five months of incarceration on *each* of his four counts of convictions, *all to run concurrently*. *See* Judgment, Doc. 136.

Thus, with no avenue challenging his conviction on Count 4, Clark has no means to affect the ultimate term of imprisonment to which he is sentenced. Because Clark will be left with a five-

month sentence to serve—no matter how the appeals in *Griffin*, *Alford*, and his own case are resolved—bail pending appeal is inappropriate in this case.

## IV.   Conclusion

For all these reasons, and for the reasons set forth in the briefings referenced herein, Clark's motion for bond pending appeal should be denied.

MATTHEW M. GRAVES
United States Attorney

By:   /s/ *Eric W. Boylan*
Eric W. Boylan
Assistant United States Attorney
Texas Bar No. 24105519
Phone: 202-815-8608
Email: Eric.Boylan@usdoj.gov
601 D Street NW
Washington, D.C. 20001

Adam M. Dreher
Assistant United States Attorney
Mich. Bar No. P79246
Phone: 202-252-1706
Email: adam.dreher@usdoj.gov
